76 F.3d 386
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
William D. GARD, Plaintiff-Appellant,
v.
AMERICAN TELEPHONE & TELEGRAPH COMPANY, Defendant-Appellee.
 No. 94-55582.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 16, 1995.
Decided Jan. 23, 1996.
 
 Before: FLETCHER, CANBY and HAWKINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 William Gard appeals from the district court's grant of summary judgment in favor of his former employer AT & T on his claims for breach of an implied-in-fact contract to discharge only for good cause and breach of the implied covenant of good faith and fair dealing under California law. Jurisdiction in the district court was proper under 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291 and affirm.
 
 BACKGROUND
 
 3
 Gard was hired as a supply man by Pacific Telephone, AT & T's predecessor, on October 10, 1966. He was elevated to a management post in 1978. While at AT & T, Gard received regular raises and positive performance evaluations until April 1991. At that time, James Tate became Gard's immediate supervisor. Although Gard's four preceding appraisals had been "exceeds objectives" or "far exceeds objectives," Tate rated Gard's performance as "partially met objectives" in Gard's next evaluation. Tate concluded that Gard had minimal involvement with the projects for which he was responsible, that two of three projects Tate observed failed miserably, and that Gard had an unsatisfactory rating for "bids on time." Because Gard had fallen two levels in terms of performance evaluations, his evaluation was reviewed by two of Tate's superiors, who concurred in the assessment.
 
 
 4
 In 1992, AT & T conducted an analysis of the number of management personnel it employed in Distribution Technologies, the division in which Tate was employed. AT & T's analysis revealed that there was a force imbalance, or surplus, within Salary Grade 4 management personnel at its Dallas, Texas and Irvine, California offices. AT & T implemented procedures for determining who would be laid off or transferred. Tate was not involved in this analysis. AT & T determined that it would lay off employees on the basis of their performance evaluations for 1991. If there were more employees receiving the same evaluation than needed to be laid off, those with the least seniority would be selected for termination. In the Irvine office, employees whose 1991 evaluations were in the "partially met objectives" category or below were at risk for termination. Three employees, including Gard, fell within this category. The two least-senior at-risk employees, including Gard, were terminated.
 
 DISCUSSION
 
 5
 The district court found that the undisputed evidence established that Gard was an at-will employee and thus precluded from maintaining a breach of contract action or action for breach of covenant of good faith and fair dealing. Even assuming there was a contract, the court found that the undisputed evidence established that AT & T did not breach the contract because it had good cause to terminate Gard.
 
 
 6
 The district court's grant of summary judgment is reviewed de novo. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir.1995). The review is governed by the same standard used by the district court under Federal Rule of Civil Procedure 56(c), Jesinger v. Nevada Federal Credit Union, 24 F.3d 1127, 1130 (9th Cir.1994): whether, with the evidence viewed in the light most favorable to the nonmoving party, there is no genuine issue as to any material fact and whether the moving party is entitled to judgment as a matter of law.
 
 
 7
 California Labor Code section 2922 establishes a presumption of at-will employment if the parties have made no express oral or written agreement specifying the length of employment or the grounds for termination. Foley v. Interactive Data Corp., 765 P.2d 373, 385 (Cal.1988). The presumption, however, may be overcome by evidence of contrary intent. Id. Factors to consider in determining whether an implied-in-fact employment agreement to discharge only for good cause exists include "the personnel policies or practices of the employer, the employee's longevity of service, actions or communications by the employer reflecting assurances of continued employment, and the practices of the industry in which the employee is engaged." Id. at 387.
 
 
 8
 We need not decide whether Gard has presented a triable issue of fact as to the existence of an implied contract. Even if we assume the existence of such a contract, the undisputed evidence establishes that AT & T did not breach the contract because it had good cause to terminate Gard.
 
 
 9
 AT & T does not contend that it had cause to terminate Gard due to unsatisfactory performance. Rather, AT & T contends that it had good cause to terminate Gard due to an economically-motivated reorganization and reduction in force. California courts have held that a valid reduction in force constitutes "good cause." See, e.g., Clutterham v. Coachman Industries, Inc., 215 Cal.Rptr. 795 (Ct.App.1985). Although Gard now attempts to challenge the validity of the reorganization, he previously conceded that the reduction in force was valid and that the overall procedures used for implementing the reorganization were fair. In any event, he has presented no evidence to counter AT & T's showing that the reduction in force was based on a valid business judgment.
 
 
 10
 Neither has Gard presented probative evidence that the reduction in force was pretextual or carried out in bad faith. See id. at 797 (upholding summary judgment where terminated employee "made no showing ... that [force reduction] was pretextual or that [the employer] acted in bad faith toward him"). The undisputed reason Gard was selected for layoff was because he received a rating of "partially met objectives" for 1991. There is no evidence that Tate knew of the planned reduction in force at the time he gave Gard his evaluation. Although Gard alleges in a conclusory manner that he was "targeted" by Tate, three of the eight managers under Tate received "partially met objectives" ratings. Gard presents no evidence that his performance was superior to that of other employees receiving the same rating. Tate's reasons for giving Gard his evaluation--e.g., that two of the three projects Tate observed failed and that Gard had an unsatisfactory rating for "bids on time"--are valid on their face. Gard declares that Tate assigned him only one employee, whereas Tate assigned the other managers eight to twelve employees. Gard does not show that this disparity unfairly affected his performance evaluation, however: he presents no evidence that he was held to the same output standards as other managers despite having fewer employees or that he was given insufficient employees to complete the projects on which his review was based.[1] Accordingly, the district court properly granted summary judgment in favor of AT & T on Gard's implied-in-fact contract claim.
 
 
 11
 The district court also properly granted summary judgment on Gard's claim for breach of the implied covenant of good faith and fair dealing: "There is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." Foley, 765 P.2d at 390 (citation omitted). Where the plaintiff relies on the same conduct for both causes of action, as is the case here, a cause of action for breach of the implied covenant of good faith and fair dealing is essentially duplicative of a cause of action for breach of implied contract to discharge only for good cause. See Aragon-Haas v. Family Sec. Ins. Servs., 282 Cal.Rptr. 233, 239 (Ct.App.1991). As the undisputed evidence establishes that AT & T had good cause to terminate Gard due to a reorganization and reduction in force and employed fair procedures in carrying out the reorganization, summary judgment was warranted on Gard's claim for breach of the implied covenant of good faith and fair dealing.
 
 
 12
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Gard declares that "it is also interesting to note that I was given a 'Partially Met Objectives' rating despite that fact that I had, in fact, exceeded my rating objective by as much as 14.76%." He does not explain or present any context for this statement, however. The fact that Gard exceeded his objectives in one category, if that is what he means, does not preclude an overall "partially met objectives" rating